IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DONTANEOUS SALLEY, # R69912, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 19-cv-00392-NJR ) |
| BAILEY, MCBRIDE, LOVE, MASION, and GRIGSBY, | ) ) ) ) ) ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Dontaneous Salley, an inmate of the Illinois Department of Corrections ("IDOC), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. He seeks a preliminary and permanent injunction, declaratory judgment, and monetary damages. When he filed his complaint a month ago, Salley was housed at Pinckneyville Correctional Center.

Before addressing Plaintiff's request for a preliminary injunction, the Court must review the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

1

# THE COMPLAINT

Plaintiff makes the following allegations in the Complaint: Plaintiff was scheduled to be transferred to Stateville Northern Reception and Classification Center ("Stateville NRC") on December 13, 2018. (Doc. 1, p. 5). A few days prior to his departure, Plaintiff packed all his personal property, including legal documents pertaining to multiple civil suits against IDOC staff at Illinois River Correctional Center and Stateville NRC. *Id.* After packing up his property, but prior to transportation, Plaintiff was ordered by the Court in one of his cases to file an amended complaint by January 4, 2019, or his case would be dismissed. (Doc. 1, pp. 5-6).

On December 12, 2018, Plaintiff was placed on crisis watch for mental health purposes, causing him to miss the transport bus for Stateville NRC. (Doc. 1, p. 5). While on crisis watch, Plaintiff told multiple mental health professionals that he was on suicide watch because he felt his life was in danger due to him filing a civil suit against multiple officials at Stateville NRC and receiving death threats. *Id.* Masion, a mental health professional on staff at Pinckneyville, told multiple officers that Plaintiff went to the "suicide room intentionally." *Id.*

While it is unclear from the Complaint when the conversation occurred, at some point when packing his things, Plaintiff was told by Property Officer Bailey that Bailey planned on keeping all of his property—including a television—indefinitely, because of Plaintiff's attempt to go on crisis watch. (Doc. 1, p. 6). Bailey also stated that an informant told him that Plaintiff had a plan to miss the transport bus to Stateville NRC. *Id*. Bailey said that he had researched Plaintiff and knew that Plaintiff was involved in multiple civil suits against IDOC and that, before going on vacation, he would inform fellow Property Officer Grigsby to also withhold the property. *Id.* Plaintiff witnessed Bailey telling Grigsby not to return his property because this is how "we treat people who file lawsuits" and use a severe mental illness as a "crutch." *Id.* At some point, when

2

Plaintiff returned to his cell, his television was gone, and his cellmate told him the Grigsby has taken it. *Id.*

Plaintiff was released from crisis watch on December 14, 2018, and returned to his cell at Pinckneyville without any of his personal property. (Doc. 1, p. 6). In order to retrieve his property, Plaintiff spoke with mental health professional Masion. *Id.* He told her that he needed his legal documents to comply with a court order. *Id.* Masion told Plaintiff that "a target ha[d] been placed on his back" and that she could do nothing for him because she had to "go along with her coworker." *Id.* Plaintiff also asked Lieutenant McBride multiple times for her help in retrieving his legal documents. (Doc. 1, p. 7). McBride refused to help him. *Id.* McBride informed Plaintiff that she was told by Bailey to scare him and that because he went on crisis watch to avoid being "shipped," extra staff was needed to take Plaintiff to and from court, causing the facility to work overtime. *Id.* When he informed her that without his legal documents his case would be dismissed, McBride responded, "good," she did not like people who filed lawsuits anyways. *Id.*

On December 18 and 19, 2018, Plaintiff told Assistant Warden Love that he had been attempting to retrieve his legal documents in order to respond to a court order. *Id.* Love stated that he had heard that Plaintiff's mother was calling about the same issue, but that he was "all for the officers" and that he would make it so that Plaintiff's case would be dismissed. *Id.* Love stated that he had read that Plaintiff likes to sue and that because Plaintiff is "a jail house lawyer wann[a]be he can get it." *Id.*

Plaintiff's case was ultimately dismissed.[1] (Doc. 1, p. 8). Plaintiff claims that the defendants acted in retaliation for filing lawsuits against other prison officials and have denied him access to the courts by withholding his legal documents.

---

[1] Plaintiff cites to case number 1:18-cv-01343-JES. (Doc. 1, p. 5).

3

**DISCUSSION**

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following four counts:

**Count 1:** First Amendment claim against Bailey, McBride, Love, Masion, and Grigsby for violating Plaintiff's right to access the courts by withholding legal documents resulting in the dismissal of his suit.

**Count 2:** First Amendment retaliation claim against Bailey, McBride, Love, Masion, and Grigsby, who refused to give Plaintiff his legal documents and other property because he filed civil suits against IDOC officials.

**Count 3:** Eighth Amendment claim against Masion for disclosing information said while on suicide watch to non-medical health professionals, violating Plaintiff's right to privacy in his medical information.

**Count 4:** Fourteenth Amendment claim against Bailey and Grigsby for deprivation of his property, including a television and his legal documents.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*.**[2]

**Count 1**

The Seventh Circuit uses a two-part test to decide if prison administrators have violated the right of access to the courts. *Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004). First, the prisoner must show that prison officials interfered with his legal materials. *Devbrow v. Gallegos*, 735 F.3d 584, 587 (7th Cir. 2013) (citing *Lewis v. Casey*, 518 U.S. 343, 348 (1996)). Second, he must be able to show "some quantum of detriment caused by the challenged conduct of state

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation." *Alston v. DeBruyn*, 13 F.3d 1036, 1041 (7th Cir. 1994); *see also Lehn*, 364 F. 3d at 868. A plaintiff must explain "the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions." *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (internal quotation and citation omitted); *accord Guajardo-Palma v. Martinson*, 622 F.3d 801, 805-06 (7th Cir. 2010). This requires Plaintiff to identify the underlying claim that was lost. *See Christopher v. Harbury*, 536 U.S. 403, 416 (2002); *Steidl v. Fermon*, 494 F.3d 623, 633 (7th Cir. 2007).

Plaintiff has alleged that Property Officers Bailey and Grigsby withheld his legal documents, refusing to return the documents even after Plaintiff informed them that his civil suit would be dismissed if he did not file an amended complaint. Likewise, Plaintiff claims that McBride, Love, and Masion had the ability to access his legal documents and also refused to help him in time to meet the Court deadline. As a result, Plaintiff was unable to amend his complaint, and the case was dismissed. Plaintiff has sufficiently alleged that Defendants' actions violated his right to access the courts, and therefore Count 1 survives screening.

**Count 2**

To prevail on his First Amendment retaliation claim, Plaintiff must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (citation omitted). Additionally, under the First Amendment, inmates are entitled "to file grievances and lawsuits, and officers may not retaliate against them for exercising that right." *Walker v. Page*, 66 F. App'x 52, 55 (7th Cir. 2003) (citing

5

*Walker v. Thompson,* 288 F.3d 1005, 1008-09 (7th Cir. 2002)). Plaintiff alleges that Defendants knew about his lawsuits against other IDOC employees and that because of these lawsuits they withheld his legal documents and other property causing one of his cases to be dismissed. Accordingly, Plaintiff has set forth sufficient allegations to proceed on Count 2.

### Count 3

The Seventh Circuit has never held that prisoners have a clear right to confidentiality in their medical records.[3] *Anderson v. Romero*, 72 F.3d 518, 522-24 (7th Cir. 1995). Instead, it has said that such a claim might be "conceivabl[e] ... if prison officials disseminated humiliating but penologically irrelevant details of a prisoner's medical history." *Id.* at 523. These types of disclosures, if actionable, would be actionable only under the cruel and unusual punishment clause of the Eighth Amendment. *Id.* That clause requires a plaintiff to show "calculated harassment unrelated to prison needs." *Johnson v. Phelan*, 69 F.3d 144, 147 (7th Cir. 1995). Furthermore, "[t]o be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Here, Plaintiff fails to allege that Masion's conduct rose to the level of cruel and unusual punishment. Plaintiff claims that he told Masion that he went on suicide watch in order to miss the transport bus to Stateville and that she shared that information with other corrections officers. At this point in time, these allegations are not enough to survive screening, and Count 3 will be dismissed without prejudice.

---

[3]Although the Seventh Circuit has yet to squarely address the issue of whether an inmate has a privacy right in his medical records, *see Massey v. Helman*, 196 F.3d 727, 742 n. 8 (7th Cir. 1999); *Romero*, 72 F.3d at 523, the Second and Third Circuits have expressly recognized that such a right exists. *See Powell v. Schriver,* 175 F.3d 107, 112-13 (2d Cir. 1999); *Doe v. Delie,* 257 F.3d 309, 315-17 (3d Cir. 2001). Those courts found, however, that "a prisoner does not enjoy a right of privacy in his medical information to the same extent as a free citizen." *Doe*, 257 F.3d at 317.

## Count 4

The Due Process Clause of the Fourteenth Amendment provides that the states shall not "deprive any person of life, liberty, or property, without due process of law[.]" U.S. CONST. amend. XIV. There is no loss of property without due process of law, however, if a state provides an adequate post-deprivation remedy for the loss. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post deprivation remedy for the loss is available.").

The Seventh Circuit has specifically held that an IDOC prisoner has an adequate post-deprivation remedy for confiscation of a prisoner's non-contraband property by IDOC personnel in the form of an action for damages in the Illinois Court of Claims. *See Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999) (citing 705 ILCS 505/8); *Stewart v. McGinnis*, 5 F.3d 1031, 1035–36 (7th Cir. 1993). Thus, Plaintiff has failed to state a cognizable Section 1983 claim against the defendants for a violation of his Fourteenth Amendment rights based on the withholding of his property. Count 4 will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

## MOTION FOR PRELIMINARY INJUNCTION

As previously noted, Plaintiff is seeking a preliminary injunction. A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure § 2948 (5th ed. 1995)). The purpose of an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A

plaintiff has the burden of demonstrating: (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012). If this burden is met, the Court must weigh the "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest. *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013).

In the Complaint, Plaintiff requests the Court to issue a preliminary injunction ordering Defendants to cease threatening him with future retaliation of segregation or administrative detention for filing lawsuits. (Doc. 1, p.8). Without expressing any opinion on the merits of Plaintiff's other claims for relief, his request for a preliminary injunction to stop threats of retaliation that has not yet occurred is **DENIED**. Plaintiff has not demonstrated he faces a specific threat of immediate and irreparable injury or loss warranting injunctive relief at this time. If interim relief becomes necessary during the pending action, Plaintiff should file a separate motion for a preliminary injunction pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, and he should describe the exact relief he seeks and the factual allegations that support his request.

### MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) is **DENIED** without prejudice.[4] Plaintiff discloses unsuccessful efforts to contact attorneys with the assistance of his mother. He has written two letters, while she has attempted to obtain counsel by making phone calls. Accordingly, he appears to have made reasonable efforts to retain counsel on his own.

---

[4] In evaluating Plaintiff's Motion for Recruitment of Counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) and related authority.

With respect to his ability to pursue this action *pro se*, Plaintiff indicates that the issues in his case are complex and will likely involve substantial investigation and discovery. He also expresses concern about his ability to handle the litigation due to his severe mental illness. Nonetheless, the Court finds that Plaintiff can proceed *pro se*, at least for now. Plaintiff's pleadings demonstrate an ability to construct coherent sentences and relay information to the Court. The claims in this case are straightforward and involve factual material that is already available to Plaintiff or can be accessed with relative ease through discovery. Plaintiff appears competent to try this matter without representation at this time. Once discovery has commenced, if Plaintiff has significant difficulty, he may refile his motion.

#### ACTING WARDEN SCOTT THOMPSON

Because Plaintiff is seeking injunctive relief, the Clerk shall be **DIRECTED** to add the acting warden of Pinckneyville, Scott Thompson, in his official capacity, as a defendant in this action. *See* FED. R. CIV. 17(d) & 21; *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out).

#### DISPOSITION

**IT IS HEREBY ORDERED** that the Motion for Appointment of Counsel (Doc. 3) is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that **Counts 1** and **2** will proceed against **Bailey, McBride, Love, Masion,** and **Grigsby**.

**IT IS FURTHER ORDERED** that **Counts 3** and **4** are **DISMISSED** without prejudice for failure to state a claim for relief.

**IT IS FURTHER ORDERED** that Plaintiff's request for a preliminary injunction is

9

**DENIED** without prejudice.

The Clerk of Court is **DIRECTED** to **ADD Acting Warden Scott Thompson** (official capacity only) as a Defendant in the Case Management/Electronic Case Filing ("CM/ECF") system for the purpose of implementing any injunctive relief that is ordered.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for **Bailey, McBride, Love, Masion,** and **Grigsby** (individual capacities) and **Thompson** (official capacity): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with that defendant's current work address, or, if not known, his or her last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs

under Section 1915, Plaintiff will be required to pay the full amount of the costs.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  May 8, 2019**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.